

**The following constitutes
the order of the court. Signed July 20, 2009**

_____
Marilyn Morgan
U.S. Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CEDAR FUNDING, INC., <br><br> Debtor. | Case No. 08-52709-MM <br><br> Chapter 11 |
| R. TODD NEILSON, Trustee for Debtor, CEDAR FUNDING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JEFF AIKEN, *et. al.*, <br><br> Defendants. | Adversary No. 08-5222 <br><br><br> **MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT** |

### INTRODUCTION

Prior to bankruptcy, Cedar Funding, Inc. was in the business of making loans secured by trust deeds against the borrowers' real property. Its operations were funded by hundreds of investors who together gave CFI millions of dollars believing that they were acquiring fractional interests in various secured loans. In this adversary proceeding, R. Todd Nielson, the trustee of CFI's estate, seeks to avoid liens that were recorded in favor of eighty-eight of those investors. He alleges that the liens constitute preferential transfers within the meaning of § 547(b) of the Bankruptcy Code. The trustee has moved for summary judgment on his claims, offering as evidence the recorded assignments transferring

fractional interests in CFI's deeds of trust to the defendant investors. Each of these assignments was recorded during the ninety day preference period preceding CFI's bankruptcy. If the assignments are avoided as preferential, the investors will join the pool of CFI's unsecured creditors.

## PROCEDURE ON SUMMARY JUDGMENT

Under Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is determined by the same standards used to decide summary judgment motions under Fed. R. Civ. P. 56. It is proper if the evidentiary proof offered by the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. When a plaintiff moves for summary judgment, the plaintiff must demonstrate all elements of its claim to prevail. *Lockwood v. Wolf Corp.,* 629 F.2d 603, 611 (9th Cir. 1980). To succeed on his avoidance claims, the trustee must provide evidence establishing each element of a preferential transfer under § 547(b) of the Bankruptcy Code.

In addition to contesting certain elements of a preference claim, defendants have alleged several affirmative defenses to the trustee's claims. Defendants bear the burden of proof on these defenses. *Johnson v. Georgia-Pacific Corp.*, 2009 WL 1311896 at *2 (9th Cir. May 12, 2009). In response to the trustee's motion for summary judgment, defendants cannot rely on their asserted catalog of defenses. *In re MarchFirst, Inc.*, 2007 WL 4105816, at *5 (Bankr. N.D. Ill. Nov. 15 2007), *citing*, *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553. At a minimum, they must offer sufficient evidence to raise a triable issue of fact as to each element of the defenses that they want to pursue.

## FACTS

Many facts regarding CFI and its operations are recounted in the court's Opinion and Order on cross-motions for summary judgment in *Rollins et al. v. Nielson (In re Cedar Funding, Inc. )*, ___ B.R. ___, 2009 WL 2038121 (Bankr. N.D. Cal. Apr. 10, 2009). To the extent applicable, those facts are incorporated herein. While some facts may be repeated here, they are limited to those needed to

2

properly understand the events pertinent to the pending motion for summary judgment. Only sixty-six of the eighty-eight named defendants have submitted materials in opposition to the trustee's motion for summary judgment. The following facts are taken from those submissions, as well as from evidentiary materials offered by the trustee. As is required on a motion for summary judgment, the facts are stated in a light favorable to the defendants as the non-moving parties.

Between December 2003 and late 2007, CFI extended ten separate real estate loans to seven different borrowers. Each loan was secured by a recorded deed of trust in favor of CFI. To fund the loans, CFI turned to its investors. Although some defendants had invested with CFI before the execution of the particular note and deed of trust in which they were investing, for the majority of the defendants, CFI solicited and received their funds after the loan transaction closed.

At the time of investment, the investors believed that, in return for their investment, they would receive fractionalized interests in one of CFI's notes and the deed of trust securing its repayment. After tendering funds to CFI, the investors generally received a form acknowledgment letter on CFI letterhead thanking them for their investment in the loan identified in the caption of the letter. Nearly forty examples of these letters were offered as evidence by the defendants who received them. While this evidence fails to establish that every investor received a similar acknowledgment letter, for purposes of this motion, it will be assumed that each did.

The body of the acknowledgment letters indicated that the investors held a specified percentage interest in the captioned loan and advised the investors when to expect the first interest payment on their investment. The letters also reflected that CFI transmitted copies of certain loan documents with the letters. The documents varied from letter to letter, but generally the letters enclosed executed copies of the original note and deed of trust between CFI and the borrower, along with copies of several *unexecuted* documents, including a Loan Servicing Agreement, a Lender/Purchaser Disclosure Statement, a Promissory Note Endorsement from CFI to the investor and an Assignment of Deed of Trust referencing the investor as an assignee. Sometimes, the letters also enclosed copies of the borrower's Uniform Residential Loan Application, a Preliminary Title Report, an appraisal of the

3

property and an investment overview. The letters routinely asked the investor to sign and return both the Loan Servicing Agreement and the Lender/Purchaser Disclosure Statement.

Contrary to the norm, the acknowledgment letters of fourteen defendant investors contained what appear to be executed Promissory Note Endorsements from CFI to the investor. They include:

| Note # | Investor | Endorsement |
|---|---|---|
| Note # 5317 | Blake Cesarin | endorsement undated (enclosed with letter dated 12/5/07) |
| | Lawrence Stock | endorsement dated 1/11/08 |
| | Cherie Thibodeaux | endorsement dated 1/11/08 |
| | Jim Thorsen | endorsement dated 1/11/08 |
| Note #5505 | David Nilsen | endorsement dated 9/24/7 [sic] |
| | Selene Olms | endorsement dated 10/17/7 [sic] |
| | Lana Ushakoff | endorsement dated 10/17/07 |
| | Marvin Spott | endorsement dated 10/23/07 |
| | Jeff Aiken | endorsement dated 1/11/08 |
| | Jim Johnson | endorsement dated 1/11/08 |
| | Randal McChesney | endorsement dated 1/11/08 |
| | Pam Nottenkamper | endorsement dated 1/11/08 |
| Note #5515 | Kay Burbidge | endorsement undated (enclosed with letter dated 11/29/07) |
| Note #5520 | Morna MacLeod | endorsement undated (enclosed with letter dated 11/29/07) |
| Note #5574 | Morna MacLeod | endorsement dated 10/15/7 [sic] |

Upon review of the executed endorsements it appears that Nilsen's signature was impressed on the endorsements using a signature stamp. A few of the endorsements were accompanied by Assignments of Deed of Trust bearing the same date and signature stamp as the endorsement.

Once CFI associated an investment with a particular note, it began to pay that investor regular monthly interest payments. CFI sent out interest payments to the investors even if the borrower on the loan was not making loan payments. By April 2008, however, CFI stopped making any interest payments to its investors. Declarations from the investors further establish that each time they contacted CFI, CFI treated them as if they owned a fractional interest in the loan in which they had invested.

During the first five months of 2008, the California Department of Real Estate and the California Department of Corporations instituted investigations of CFI and its sole shareholder, Nilsen. On May

4

16, 2008, the DRE reinstated a 100 day suspension of Nilsen's real estate license due to multiple and continuing violations of California's Business and Professions Code, which included a finding that Nilsen had failed to record deeds of trust naming the individual lenders as beneficiaries and, in some instances, Nilsen had recorded deeds of trust in favor of CFI instead of the lenders. In an apparent attempt to save his real estate license, between March 18, 2008 and May 22, 2008, Nilsen had CFI execute Assignments of Deeds of Trust reflecting the fractionalized interests that each of the defendants held in the loans at issue. All of these assignments were recorded with the appropriate county recorder's office sometime between April 28, 2008 and May 22, 2008. Whether the note endorsement that a particular defendant received was executed or not, the fractional assignment of CFI's deed of trust was recorded less than thirty days before CFI's bankruptcy filing on May 26, 2008.

## DISCUSSION

Under § 547(b), the trustee must provide undisputed evidence showing that the security interests in question were an interest of CFI in property and that the transfers of those interests 1) were for the benefit of a creditor; 2) were on account of an antecedent debt; 3) were made while CFI was insolvent; 4) were made within 90 days of CFI's bankruptcy petition; and 5) would allow the receiving creditor to receive more than it would under a chapter 7 liquidation, without the transfer. 11 U.S.C. § 547(b). Because CFI originally received and held recorded deeds of trust securing repayment of its borrowers' promissory notes there is no real dispute that the fractional security interests that were transferred to the defendants constituted an interest of CFI in property. There is also no dispute that CFI promised to transfer fractional interests in the notes and deeds of trust to its investors in return for their investments. Until CFI accomplished those transfers, the investors were creditors entitled to the conveyance of their security interests in the loans, which is why the trustee refers to the transactions as "failed sales." Based on the defendants' opposition papers, the only dispute is over the fourth element of the trustee's case – whether the transfer of the defendants' secured interests in the underlying loans took place during the 90 days immediately preceding CFI's bankruptcy, a time period when CFI is presumed to have been

5

insolvent. Defendants contend that CFI transferred full ownership of their secured interests outside of the preference period in one of two ways: CFI physically executed a Note Endorsement in favor of fourteen defendants or, with respect to the remaining defendants, the Note Endorsement was executed by integration into an acknowledgment letter that was signed prior to the preference period. Alternatively, defendants assert that summary judgment is unwarranted due to questions of fact as to whether they have an equitable lien that pre-dates the preference period. Neither argument is persuasive.

## I. Note Endorsements Outside the Preference Period Do Not Preclude Avoidance of the Liens.

Section 547(e) of the Bankruptcy Code governs whether or not a transfer is made within the 90 day preference period. According to its terms, for avoidance purposes, a transfer is made:

> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time;
> (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days.

11 U.S.C. § 547(e)(2)(A) and (B). Under this definition, a transfer is not necessarily "made" at the time that the debtor completes an effective transfer to the intended transferee. Rather, the court must also consider when the transfer is perfected to see whether the effective date or the perfection date will control. Under § 547, perfection depends on whether the transfer involves real property or not. A transfer of real property is perfected when "a bona fide purchaser of the property cannot acquire an interest that is superior to the interest of the transferee." *Id.* at § 547(e)(1)(A). The transfer of something other than real property is perfected when "a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee. *Id.* § 547(e)(1)(B). State law determines when it is no longer possible to gain a superior interest *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1420 (9th Cir. 1985).

In California, a deed of trust is a grant of an interest in real property. *In re Cortez*, 191 B.R. 174, 178 (9th Cir. B.A.P. 1995). As a result, § 547(e) dictates that the perfection date for the transfers of fractionalized security interests from CFI to the defendants is the date when a bona fide third party

6

purchaser could no longer acquire a property interest senior to the defendants' security interests. Under California's real property recording system, the priority of conveyances, with an exception for leases that is not applicable here, is determined by time of recordation, not time of transfer. Cal. Civ. Code §§ 1213-1214; *Bratcher v. Buckner*, 90 Cal. App. 4th 1177, 1185 (2001). A "conveyance" includes every written instrument by which any interest in real property is created, mortgaged or encumbered, or by which the title to any real property may be affected. Cal. Civ. Code § 1215. Consequently, a deed of trust, as an instrument providing a security or collateral interest in real property, must be perfected by recordation to be binding on subsequent purchasers without notice. *Cortez*, 191 B.R. at 178. Similarly, an assignment of a deed of trust may be valid as between the assignor and assignee without recording, but it is only upon recording that its priority is perfected and provides constructive notice to third parties to prevent them from gaining a superior interest. Cal. Civ. Code § 2934. *See also* 4 Miller & Starr, CALIFORNIA REAL ESTATE, 3d ed., Deeds of Trust § 10:39 (2000).

Defendants contend that CFI transferred the promissory notes to defendants before the 90 day preference period began and that the transfer of the debt carried the security interests with it. Cal. Civ. Code § 2936. The parties spend a large portion of their papers discussing whether the promissory notes were properly endorsed or assigned to the defendants. But that discussion misses the effect of California's real property recording system. While it may be unclear whether the signed acknowledgment letters incorporated the notes or whether CFI otherwise assigned the promissory notes to the defendants, for purposes of this motion, I will assume that they did. Further, any assignment of the underlying debt would have carried the security with it. *Id.*; 4 Miller & Starr, at §10:38 (transfer of the debt accomplishes the transfer of the security without the necessity of a formal assignment of the trust deed). Mere transfer of the security interests, however, is only valid between the assignors and assignees of the security interests. To be effective against third parties, or "perfected" within the meaning of § 547(e), the assignment or transfer of the deeds of trust had to be recorded. *Id.* § 2934.

It is undisputed that the assignments reflecting defendants' fractionalized interests in CFI's deeds of trust were all recorded between April 28, 2008 and May 22, 2008. Thus, regardless of when the

7

assignments were effective between the parties, they were all perfected on or after April 28. The record also establishes that CFI assigned its notes to the defendants on or before February 9, 2008. As a result, the transfers were perfected more than 30 days after the transfers presumably became effective between the parties. According to § 547(e)(2)(B), for purposes of avoidance as a preference, the transfers were made at the time of perfection. Perfection occurred, and therefore the transfers were made, less than 90 days before the petition date.

### II. There Is No Basis For Imposing Either a Resulting Trust or an Equitable Lien to Preclude Avoidance of Defendants' Security Interests.

Defendants' urge that summary judgment is also inappropriate because there are questions of fact regarding whether the defendants have "an equitable lien as a resulting trust" that transferred the equity of their security interests to them back at the time of their investment in CFI. They reason that only bare legal title was transferred when the trust deed assignments were recorded during the preference period, and therefore their equitable liens/resulting trusts are not subject to avoidance as preferences. In support of this theory, defendants characterize the difference between equitable liens by agreement and resulting trusts as a semantic debate and contend that equitable liens are really just a subset of a larger umbrella called resulting trusts. The law does not support defendants' umbrella theory.

As this court has previously explained, the two equitable remedies – resulting trusts and equitable liens – are distinctly different and independent remedies. *See Rollins*, 2009 WL 2038121, at *12-13. Even though resulting trusts and equitable liens by agreement are both used to carry out the demonstrated or inferred intent of the parties to a transaction, it is important to reiterate that the intent to be enforced and the relationship of the parties is not alike. When evidence establishes that both parties to a transaction intended that the holder of the property was to hold it in trust for another, the court may use a resulting trust to accomplish that goal. The resulting trust enforces a relationship that was always intended to be that of trustee and beneficiary. By contrast, equitable liens by agreement are used to fulfill a demonstrated or inferred intent that a certain asset be used to satisfy a debt that is owed between the

8

parties. Bogert, *Trusts and Trustees*, § 32 (updated 2008). The parties have a debtor-creditor relationship, not one of trustee and beneficiary. The effect of these two equitable remedies on the property of a bankruptcy estate is also dissimilar. Because a resulting trust gives life to an intended trust relationship, the trust property never belongs to the debtor and does not become part of the estate. *In re Unicom Computer Corp.*, 13 F.3d 321, 324 (9th Cir. 1994); *In re Golden Triangle Capital, Inc.*, 171 B.R. 79, 83 (9th Cir. B.A.P. 1994). An equitable lien does not attach to any particular property until its existence is judicially recognized. *New v. New*, 148 Cal. App. 2d 371, 381 (1957). *See also* 51 Am. Jur. 2d Liens at § 32. Once recognized, it may relate back to take priority over some creditors, but not over bona fide purchasers for value. *First Fidelity Thrift & Loan Association v. Alliance Bank*, 60 Cal. App. 4th 1433, 1440-41 (1998)(good faith encumbrancer for value who first records takes interest free and clear of unrecorded interests); *Jud Whitehead Heater Co., v. Obler*, 111 Cal. App. 2d 861, 873 (1952)(equitable lien can be enforced against subsequent transferee "who has notice of the equitable lien or *who does not give value*" [emphasis in original]).

Nothing in defendants' supplemental briefing requires different conclusions regarding the similarities and differences between resulting trusts and equitable liens by agreement. For purposes of the pending motion, however, the court must determine if there is a triable issue of fact as to whether either a resulting trust or an equitable lien should be imposed and, if so, whether the existence of an equitable remedy could prevent avoidance of the perfected trust deed assignments.

**A.     There Is No Evidence Of An Intent To Enter A Trust Relationship**

Evidence of intent to create a trust relationship must be clear and convincing before a resulting trust can be declared. *G.R. Holcomb Estate Co. v. Burke*, 4 Cal. 2d 289, 299 (1935); *Johnson v. Johnson*, 192 Cal. App. 3d 551, 556 (1987). Here, there is no evidence that either CFI or the defendants intended to enter into a trust relationship. As I explained in *Rollins*, the intent of the fractionalized interests in CFI's deeds of trust was to provide defendants with security for recouping the investment they placed with CFI. *Rollins*, 2009 WL 2038121 at *13. Intent to establish a security interest rather than a trust does not provide a basis for imposing a resulting trust to remedy the failure to perfect the security

9

interest. *In re Foam Systems Co.*, 92 B.R. 406, 409 (9th Cir. BAP 1988), *aff'd*, 893 F.2d 1338, 1990 WL 1415, at *3 (9th Cir. Jan. 12, 1990)(no resulting trust imposed against bank account representing advance payment of supply contract where express intent between debtor and surety company was that surety would have lien against the account for any monies it paid if the debtor failed to fulfill the contract). Absent some evidence of the requisite intent, there is no basis for concluding that a resulting trust could be imposed.

**B.  The Imposition Of Equitable Liens Would Be Inconsistent With Bankruptcy Law And Policy.**

Even if defendants' declarations were sufficient to raise a question of fact regarding their entitlement to an equitable lien, caution is required before exercising this inchoate equitable power in the bankruptcy context. *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985). Once bankruptcy intervenes, the right to an equitable lien should be balanced against bankruptcy principles of ratable distribution. For the reasons explained in the *Rollins* decision, CFI's bad business practices, including the commingling of investment monies from individual investors with payments from borrowers, precludes the recognition of an equitable lien in favor of any particular claimant. To prefer one claimant by awarding an equitable lien would be unfair to potential competing equitable claims to the same property. *See Rollins*, 2009 WL 2038121 at *14-15.

Further, it would make little sense to impose an equitable lien under the circumstances of this proceeding because any such lien would be avoidable as a preference. As one leading bankruptcy treatise has recognized, "for purposes of Code § 547, an equitable lien is transferred when steps to declare or enforce it are taken and without the benefit of any relation-back principle." 4 NORTON BANKRUPTCY LAW AND PRACTICE § 66.17 (3d ed. 2008). *Accord Cadle Company v. Mangan*, 316 B.R. 11, 22-23 (D. Conn. 2004)(finding the analysis set forth in NORTON persuasive). This conclusion is consistent with both the language of the Code and its historical treatment of equitable liens. As already discussed, under § 547(e), a transfer of an interest in real property is deemed to occur only when a bona fide purchaser without notice of the lien can no longer obtain a superior interest. Significantly, no relation back

10

principle is recognized in that standard. Although § 546(b) of the Code limits some avoiding powers by preserving relation back features of state law, § 547 is conspicuously absent from the list of Code sections that remain subject to state law relation back rules. The historical treatment of equitable liens under the preference laws also supports the conclusion that equitable liens do not relate back for preference purposes. *See* 4 NORTON at § 66.17 (discussing the Bankruptcy Act's adoption of a bona fide purchaser test for preference laws, which operated to avoid many equitable liens and the subsequent effect of the Uniform Commercial Code, which eliminated the need for special provisions regarding equitable liens). Even though an equitable lien, once imposed, is said to relate back to the time of the conduct creating it, as an unrecorded lien, it only takes precedence over subsequent attaching judgment creditors, not bona fide purchasers. *First Fidelity*, 60 Cal. App. 4th at 1440-41; *Jud Whitehead*, 111 Cal. App. 2d at 873. Thus, under § 547 and the facts of this case, the imposition of an equitable lien would not prevent the trustee from avoiding it.

**III. <u>Summary Judgment Is Not Otherwise Improper</u>**.

The sixty-six defendants who filed opposition to the trustee's motion for summary judgment finally complain that the trustee's motion seeks relief that goes beyond the claims alleged in the complaint. However, the trustee, quite simply, seeks a determination as a matter of law that the security interests of the defendants constitute avoidable preferences. Although the trustee offered some arguments in anticipation of defenses that the defendants might raise, a review of the motion papers uncovers no attempt to expand the scope of the complaint.

Further, defendants have offered no evidence to support the majority of the affirmative defenses that they have alleged. To the extent that these defenses are not supported by any evidence, they cannot prevent the entry of summary judgment in the trustee's favor. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;. *MarchFirst,*, 2007 WL 4105816, at *5.

11

Finally, twenty-two defendants have failed to lodge any opposition to the trustee's motion for summary judgment. When an opposing party does not respond to a motion for summary judgment, the motion should, if appropriate, be granted. Fed. R. Civ. P. Rule 56(f). Because these defendants have not raised any factual disputes and the trustee has established his entitlement to relief as a matter of law, summary judgment is also appropriate against the defendants who have failed to respond.

## **CONCLUSION**

The trustee has withdrawn his motion for summary judgment with respect to the security interest transferred to defendant Andrew Foux and will seek leave to amend the complaint to correctly name all the transferees of that interest. For the reasons explained, however, the trustee's motion for summary judgment is granted in favor of the trustee and against all other defendants.

Good cause appearing, IT IS SO ORDERED.

**** END OF ORDER ****

12

Case: 08-05222    Doc# 130    Filed: 07/20/09    Entered: 07/20/09 13:49:12    Page 12 of 15

Adv. P. 08-5222

# UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SERVICE LIST

| | |
|---|---|
| Cecily A. Dumas<br>FRIEDMAN DUMAS & SPRINGWATER LLP<br>150 Spear Street, Suite 1600<br>San Francisco, CA 94105 | Larry J. Lichtenegger, Esq.<br>Vincent C. Catania, Esq.<br>ATTORNEYS AT LAW<br>3850 Rio Road, #58<br>Carmel, CA 93923 |
| Jeffrey A. Miller<br>LAW OFFICES OF JEFFREY A. MILLER<br>1304 East Dexter Street<br>Covina, CA 91724 | Wesley J. Hammond<br>WILD, CARTER & TIPTON, PC<br>246 West Shaw Avenue<br>Fresno, CA 93755-6339 |
| Pamela Allinson<br>P.O. Box 2425<br>Placerville, CA 95667 | Stuart Beck<br>32001 Greenwood Road<br>Elk, CA 95432 |
| Barney Belleci<br>P.O. Box 221399<br>Carmel, CA 93922 | Joseph A. Bruno<br>1030 Forest Ave.<br>Pacific Grove, CA 93950 |
| Heather East<br>150 Seeno Street<br>Monterey, CA 93940 | Caitlin Gilchrist<br>7707 Rolling Acres Drive<br>Dallas, TX 75248-5614 |

13

| | | |
|---|---|---|
| 1 | | |
| 2 | Ellen Jasnosz | Edith Karas |
| 3 | 205 Fairway Glen Lane | 200 Glenwood Circle, Apt. 102 |
| | San Jose, CA 95139 | Monterey, CA 93940 |
| 4 | | |
| 5 | Bernard W. Kaufeldt | Ovilee M. Kennedy |
| 6 | 655 Wildwood Dr. | P.O. Box 2192 |
| | Watsonville, CA 95076 | Carmel, CA 93921-2192 |
| 7 | | |
| 8 | Sara H. Knoles | Walter Marshall |
| 9 | 651 Sinex Ave., Apt. 212 | 375 Lucinda Street |
| | Pacific Grove, CA 93050 | Scotts Valley, CA 95066 |
| 10 | | |
| 11 | Randolph Lee Morris | Adrienne M. Noggle |
| 12 | 625 Main Street | 9475 King Road |
| | Watsonville, CA 95076 | Salinas, Ca 93907 |
| 13 | | |
| 14 | Richard F. Josephson Trust | Gordon M. Robertson |
| 15 | 119 Effey Street | 9505 Alder Street |
| | Santa Cruz, CA 95062 | Carmel, CA 93923 |
| 16 | | |
| 17 | Jeffrey M. Russum | Andrew Sievright |
| 18 | 19481 Mallory Canyon Rd. | 17800 Shasta Lake Road |
| | Prunedale, CA 93907 | Lakehead, CA 96051 |
| 19 | | |
| 20 | Charles R. Singer | Gray N. Smith |
| 21 | 320 Possumwood Ridge | P.O. Box 213 |
| | Aptos, CA 95003 | So. Thomaston, ME 0485 |
| 22 | | |
| 23 | Kipp Stewart | Kyung Hi Stewart |
| 24 | P.O. Box 6145 | P.O. Box 6145 |
| 25 | Carmel, CA 93921 | Carmel, CA 93921 |
| 26 | | |
| 27 | | |
| 28 | | 14 |

| | |
|---|---|
| 1 | |
| 2 | Victoria L. Gilchrist |
| 3 | 7707 Rolling Acres Dr.<br>Dallas, TX 75248-5614 |
| 4 | |
| ... | |
| 28 | 15 |